This appeal is from the denial of the second petition for relief under section 2255 (28 U.S.C. § 1291).

Careful consideration of the allegations of error contained in the first and second petitions convinces us that the district judge was correct in his exercise of the discretion granted him by the above quoted provision. The two petitions are, in all material aspects, substantially alike.

██ Appellant contends that he was entitled to a hearing on the second petition. He is so entitled "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." The latter is the case here.

The decision of the district court is affirmed.

COLBY LUMBER COMPANY, Incorporated, and Hansen & Rowland, Inc., of Alaska, Plaintiffs, v. ALASKA INDUSTRIAL BOARD, consisting of Henry A. Benson, Chairman, J. Gerald Williams, Member and Ross P. Duncan, Member, and Gus George, Defendants.

No. 7774–A

District Court, Alaska. First Division, Juneau.

July 31, 1958.

Robert Boochever, of Faulkner, Banfield & Boochever, Juneau, Alaska, for plaintiffs.

M. E. Monagle, of Robertson, Monagle & Eastaugh, Juneau, Alaska, for defendant Gus George.

KELLY, District Judge.

■ This matter comes before the court upon an appeal by the Colby Lumber Company and their insurance carrier (hereafter "employer") from an award of the full Board dated February 5, 1958, which award affirms the decision of Chairman Henry A. Benson and member Ross P. Duncan dated November 21, 1957, as follows:

> "We find that a reasonable allowance for that expense while obtaining physio-therapy and out-patient care is $8 per day. After May 1 it appears that applicant obtained an apartment and prepared his own meals and we find that an allowance of $160 a month is reasonable. Applicant traveled by bus from his hotel and apartment to the clinic and hospital for out-patient care and we find that an allowance of $10 a month from September 1, 1955 to December 31, 1956, or a total of $160 is reasonable. Upon the termination of his temporary disability applicant requested return transportation to his home in Haines, Alaska and we find that an allowance of $73.97 is reasonable."

The facts as to the accident and the injury are not in dispute. The facts upon which the award was based are set forth in the findings of fact. The employee lives in Haines, Alaska and was employed there by the employer, where he suffered an injury to the left hand on May 4, 1955, which required extensive hospitalization and surgery. The findings of fact further held that the evidence was conclusive that following employee's hospitalization and treatment at Juneau, subsequent to the injury, the employee returned to Haines, where he was seen by Dr. C. C. Carter, who ad-

vised that he obtain a specialist's care at Seattle, Washington. The employee went to Juneau, Alaska, where he awaited transportation to Seattle. During this waiting period, through no fault of his own, he acquired expenses for hotel lodgings in the amount of $73.44, and meals in the amount of $90, for a total of $163.44. Upon arrival in Seattle he was given a daily course of physiotherapy treatments. Upon the conclusion of this treatment he was given a permanent disability rating of 50% of the loss of the use of the hand. The representative of the carrier discussed settlement and employee was referred to a hand specialist, Dr. Morris J. Dirstine, in Seattle, who evaluated the disability at 75% and recommended surgery, which was performed, and on February 4, the employee was rated as having reached maximum improvement, able to return to work with a residual loss of 50% of the use of the left hand. No written agreement was entered into between the representative of the insurance carrier and the employee as to the allowance which was to be paid for living expenses while receiving out-patient care while in Seattle. The decision held that a reasonable allowance for these expenses while obtaining physiotherapy and out-patient care was $8 per day. After May 1st it appears the employee obtained an apartment and prepared his own meals and he was allowed $160 a month by the Board as a reasonable allowance therefor. The employee traveled by bus from his hotel and apartment to the clinic and hospital for out-patient care and he was granted an allowance by the Board of $10 per month from September 1, 1955 to December 31, 1956, or a total of $160. They further allowed him $73.97 as a reasonable amount for transportation to his home in Haines, Alaska, from Seattle.

The question is presented as to whether the Alaska Industrial Board may grant "cost-of-living" expenses to a

claimant who is undergoing medical treatment for a pro-
longed period of time at a place other than his resi-
dence. Pursuant to Section 43–3–2, A.C.L.A.1949, as
amended by Chapter 141, S.L.A.1955, an employer is obli-
gated to provide an injured employee:

> " * * * such medical, surgical, chiropractic,
> osteopathic or other attendance or treatment,
> nurse and hospital service, medicine, crutches and
> apparatus for such period as the nature of the in-
> jury or the process of recovery may require
> * * *."

Section 43–3–21, A.C.L.A.1949 requires any insurer of the
employer's responsibility to the employee for medical treat-
ment to assume:

> " * * * all the obligations to pay physician's
> fees, nurse's charges, hospital services, hospital
> supplies, medicine, prosthetic devices, transporta-
> tion charges to the nearest point where adequate
> medical facilities are available * * * "

Other provisions of the act subject the insurance policy
to the act, and provide the conditions under which the insur-
ance company must pay and discharge its liability to an in-
jured employee.

The above provisions make no express reference to
"living expenses," and in the absence of express grant, and
barring circumstances which by implication may permit the
Board to exercise certain powers incidental to the powers
enumerated so as to effectuate the purposes of the act, the
Board is limited in its authority to permit an injured em-
ployee to recover only for those medical expenses which an
insurer and employer are required to pay under the above
mentioned provisions. See Trigg v. Industrial Commission,
1936, 364 Ill. 581, 5 N.E.2d 394, 108 A.L.R. 153; Utah

Copper Co. v. Industrial Commission of Utah, 1920, 57 Utah 118, 193 P. 24, 13 A.L.R. 1367.

Under the facts of the instant case, the claimant was single while undergoing medical treatment in Seattle, and was receiving total disability compensation at that time. The facts are much the same as those presented in Clark v. Fedders-Quigan Corp., 1954, 284 App.Div. 430, 131 N.Y.S.2d 575, wherein a claimant receiving total disability compensation requested reimbursement for living expenses incurred while undergoing a climate change to correct his injury. The court held that the Board was without authority to grant living expenses where his living expenses did not exceed his normal expenses while living at home. At most, the Alaska Industrial Board would have implied authority to grant living expenses under the facts found by the Board only where such expenses became incidental to the expressly mentioned medical expenses due to their excess over the normal living expenses of the employee while at home. The purpose of total disability compensation is to protect the otherwise wage-loss of the employee, and to a large extent, was brought about to insure the employee as nearly as possible of a standard of living equal to that prior to his injury. The granting by the Board of living expenses to an employee while undergoing medical treatment would be a duplication of the object of total disability compensation, where the employee's living expenses do not exceed the expenses he would have incurred while living at home. The fact that the claimant was single, and that the cost of living is lower in Seattle, is evidence that the employee's expenses while undergoing treatment in Seattle were not in excess of what he would have incurred had he remained in Alaska. Clark v. Fedders-Quigan Corp., supra.

**656**

■ There is also presented the question as to whether the plaintiff is entitled to reimbursement for living expenses paid the employee prior to the Board order requiring that plaintiff pay such expenses. The facts disclose that sums of money for the claimant's living expenses were paid voluntarily to the employee in addition to total disability compensation. The plaintiff requests that these voluntary payments in excess of total disability compensation be credited against the amount due the claimant for his partial disability. For his argument, the plaintiff cites Section 43–3–4, A.C.L.A.1949, which provides:

"No such review shall affect such award, order or settlement as regards any moneys already paid, except that an award or order increasing the compensation rate may be made effective from the date of injury, and except that if any part of the compensation due or to become due is unpaid an award or order decreasing the compensation rate may be made effective from the date of injury, and any payments made prior thereto in excess of such decreased rate shall be deducted from any unpaid compensation, in such manner and by such methods as may be determined by the Industrial Board."

At once, it may be noted that this section is not applicable. It has reference solely to amounts paid in accordance with the statutory scheme, and under a plan contemplated by the Workmen's Compensation Act. This section is applicable only where an employer pays compensation within limitations of the statute, and an order is entered decreasing the rate of compensation owed the employee. However, where total disability is paid the claimant, and voluntary payments are made to the claimant in addition to the total compensation, it cannot be said that such

payments were made under the statutory scheme, and there is nothing to show that the plaintiff intended that these sums be applied against the final award since they were never intended as compensation in the first instance, but were paid only as an act of benevolence. Had the employee consented to their application against a final award, the result would be different. Bobertz v. Hillside Tp., 1940, 14 A.2d 495, 18 N.J.Misc. 399; Krupp v. J. C. Penney Co., 1938, 51 Ariz. 228, 75 P.2d 692. Contra, Don Clawson Drilling Co. v. Finch, Okl.1954, 277 P.2d 127. In the absence of statutory authority, the plaintiff is not entitled to a credit against the award for partial disability in the amount of the excess voluntary payments.

The foregoing shall constitute findings of fact and conclusions of law unless the parties desire additional findings or conclusions.

This matter is remanded to the Alaska Industrial Board for revision of the award, consistent with this opinion. Proper orders to accomplish this will be presented.